# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF KENTUCKY
# NORTHERN DIVISION
# COVINGTON

**CRIMINAL ACTION NO. 17-34-DLB-CJS-1**

**UNITED STATES OF AMERICA**                                          **PLAINTIFF**

**V.**                  **REPORT AND RECOMMENDATION**

**RICHARD R. CRAWFORD**                                            **DEFENDANT**

\* \* \* \* \* \* \* \* \* \*

Defendant Richard Crawford is charged with knowingly and intentionally distributing and possessing with the intent to distribute cocaine, as well as knowingly and intentionally possessing with the intent to distribute 28 grams or more of a mixture or substance containing cocaine base, all in violation of 21 U.S.C. § 841. (R. 1). On November 9, 2017, Defendant filed a Motion to Suppress, arguing the affidavits in support of the search warrants issued prior to Defendant's arrest were insufficient. (R. 14). A motion conference was held, wherein Defendant was given leave to file a Supplemental Suppression Motion. (*See* R. 17).

Defendant filed his Supplemental Motion to Suppress on November 28, 2017. (R. 18). The United States filed its Response on December 18, 2017. (R. 19). Defendant filed his Reply on January 2, 2018. (R. 20). Having all relevant documents before the Court, the matter is ripe for consideration. The Motions have been referred to the undersigned for consideration and preparation of a Report and Recommendation. (R. 3); 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, it will be recommended that Defendant's Motion to Suppress and Supplemental Motion to Suppress (R. 14; R.18) be **denied**.

**I.      BACKGROUND**

On June 5, 2017, the Hamilton County Court of Common Pleas issued a search warrant authorizing "electronic monitoring and tracking information" for Defendant's cell phone ("cell phone warrant"). (R. 19-1, at 2). Included with the warrant application was the affidavit of Agent Erik Nelson, a narcotics investigator with the Regional Narcotics Unit. (*Id*. at 4-7). The affidavit stated Agent Nelson had been given information by a confidential informant ("CI") about an individual who was distributing cocaine in the Hamilton County area. (*Id*. at 5). After viewing Defendant's driver's license photograph, the CI positively identified Defendant as the person distributing cocaine and using the cell phone subject to the search warrant to arrange the distributions. (*Id*.). The CI stated he/she had worked as a confidential informant in the past, and two other law enforcement officers confirmed the CI was reliable and trustworthy. (*Id*.). The two other law enforcement officers of the Drug Abuse Reduction Task Force ("DART") and the Hamilton County Heroin Coalition Task Force stated the CI had participated in past narcotics investigations that led to arrests and convictions of others who had distributed narcotics. (*Id*.).

The affidavit further states that Agent Nelson subsequently conducted a records check which revealed Defendant had prior convictions for drug crimes. (*Id*.). Upon further conversation with the CI, Agent Nelson verified Defendant was still utilizing the cell phone to be searched, and that Defendant had traveled to Columbus, Ohio to reconnect with a drug organization. (*Id*. at 5-6). Defendant communicated cocaine prices to the CI, who relayed such information to Agent Nelson. (*Id*. at 6). The CI showed Agent Nelson text message conversations he had with Defendant. (*Id*.). Agent Nelson then ran a check through departmental resources and discovered that the number was listed on an account administered by The Sprint Corporation. (*Id*.).

On June 12, 2017, a search warrant was obtained from Hamilton County, Ohio authorizing the installation and monitoring of a GPS device on Defendant's vehicle and monitoring of the device for a period of 30 days ("Ohio GPS Warrant"). (R. 19-2, at 5). Agent Nelson also submitted an affidavit in support of the Ohio GPS warrant. (*Id*. at 1-4). Substantially similar facts were stated in the affidavit concerning the information provided by the CI. (*Id*. at 2). Just as in the affidavit in support of the cell phone warrant, Agent Nelson verified the CI had worked as a confidential informant in the past and participated in a past investigation that led to the arrest of an individual distributing narcotics, and that the CI was deemed to be reliable and trustworthy by Agent Nelson. (*Id*.). Agent Nelson again stated he subsequently conducted a records check and found Defendant had prior drug convictions. (*Id*. at 2-3). The affidavit further noted that the CI informed Agent Nelson that Defendant drove a silver 2003 BMW X5 and also provided the registration number. (*Id*. at 3). Agent Nelson conducted a records check and discovered the vehicle was registered to Defendant. Through surveillance of an apartment complex in Northern Kentucky later confirmed by Agent Nelson to be Defendant's home, Agent Nelson observed Defendant enter the driver's side of the vehicle previously described and depart the apartment complex while driving the vehicle. (*Id*.).

On June 21, 2017, a search warrant was obtained from Boone County, Kentucky, authorizing the installation and monitoring of a GPS device for the same vehicle described in the Ohio GPS warrant ("Kentucky GPS warrant"). (R. 19-3). An affidavit of Agent Chris Boyd of the Northern Kentucky Drug Strike Force was included in the warrant application. (*Id*. at 4). In the affidavit, Agent Boyd discussed the information provided by the same CI and relied upon by Agent Nelson. (*Id*. at 5). The description of the contact with the CI was identical, except "your affiant" was replaced with "Agent Nelson." (*Id*.). The affidavit included a description of Agent

3

Nelson's corroboration of the CI's information, including the records check revealing Defendant's criminal history, verifying the vehicle described by the CI belonged to Defendant, and the surveillance conducted that revealed Defendant did in fact drive the described vehicle. (*Id*. at 5-6). Agent Boyd's affidavit also included a reference to the prior Hamilton County warrant authorizing "electronic monitoring and tracking information" for Defendant's cell phone, and stated that information gathered as a result of the cell phone warrant placed Defendant in the area at which the agents claimed Defendant resided. (*Id*.).

On June 29, 2017, a search warrant was obtained from Boone County, Kentucky, authorizing the search of Defendant's apartment and vehicle ("home and vehicle warrant"). (R. 19-4). Agent Boyd provided an affidavit with the warrant application, and again set forth a substantially similar description of Agent Nelson's contact with the CI. (*Id*. at 3-5). Further, Agent Boyd stated he himself had met with Agent Nelson and the CI on June 27, 2017, and the CI informed him that Defendant had recently made numerous attempts to sell large quantities of cocaine to the CI. (*Id*. at 4). The CI made a monitored and recorded call to Defendant, at which time the two discussed meeting so Defendant could sell cocaine to the CI, and a controlled buy was planned. (*Id*.). Agents then observed Defendant leave his residence with a black duffel bag, which the CI previously stated was used by Defendant to transport cocaine. (*Id*. at 5).

Prior to the controlled buy, the CI and his/her vehicle were searched for contraband and currency, and neither were found. (*Id*.). The CI then met with Defendant and conducted a controlled buy of cocaine from Defendant. (*Id*.). According to the affidavit, immediately following the controlled buy, the CI returned to the agents and provided them with approximately 29 grams of cocaine purchased from Defendant. (*Id*.). The CI was again searched for contraband and currency, and neither were discovered. (*Id*.). Agent Boyd then reviewed the GPS tracking

4

log, which revealed Defendant departed from his home minutes before the controlled buy was scheduled to take place, arrived at the location discussed with the CI, and remained there until the controlled buy was complete. (*Id.*)

The search warrant was returned on June 29, 2017. (*Id.* at 9). Agents seized 3 cell phones, $3,705.00 in U.S. Currency of which $1,390.00 was marked currency provided in the controlled buy, 506 grams of suspected cocaine, a digital scale box, and Defendant's vehicle. (*Id.*). According to Defendant, "Defendant was held in custody and interrogated during and as the result of the search of the residence." (R. 18, at 5).

A federal grand jury returned an indictment on September 14, 2017 (R. 1), and on September 20, 2017, Defendant was arrested for distribution and possession with intent to distribute cocaine, and possession of 28 grams or more of cocaine base with intent to distribute. (R. 8). Defendant was brought before the undersigned on September 20, 2017 for his initial appearance and arraignment and entered a plea of not guilty. (*See* R. 9). Defendant filed the present Motion to Suppress on November 9, 2017, and the Supplemental Motion to Suppress on November 28, 2017. (R. 14; R. 18).

In the Motions, Defendant argues "no probable cause existed to issue the warrants," as the Government relied on the uncorroborated statements of a confidential informant. (R. 18, at 3). Further, according to Defendant, the warrants that authorized GPS tracking of Defendant's vehicle, and the search of Defendant's home and vehicle, are fruit of the poisonous tree arising out of the information gathered from Defendant's cell phone as a result of the June 5, 2017 warrant. (*Id.* at 2). Defendant seeks to suppress all evidence obtained as a result of the cell phone warrant, the Kentucky GPS warrant, the search of Defendant's home on June 29, 2017, and any statement given by the Defendant on June 29, 2017. (R. 14, at 1).

5

## II.    ANALYSIS

The Fourth Amendment to the United States Constitution protects individuals against unreasonable searches and seizures. U.S. Const. amend IV. To protect that interest, the Fourth Amendment requires that a search warrant issue only upon a showing of probable cause, "supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." *Id.*; *see also Illinois v. Gates*, 462 U.S. 213, 238-40 (1983). Simply put, the Fourth Amendment requires that the search warrant: 1) be issued by a neutral and detached magistrate; 2) issued upon a finding of probable cause; and 3) particularly describe the place to be searched and the items to be seized. *United States v. Beals*, 698 F.3d 248, 263-64 (6th Cir. 2012).

### A.    The warrants were supported by probable cause

Here, Defendant does not argue that the warrants were not issued by a neutral and detached magistrate, or that the warrants did not particularly describe the place to be searched and the items to be seized. Rather, Defendant's argument is directed to whether probable cause existed to support the issuance of the warrants. (R. 18, at 3). The affidavits included with the application for the cell phone warrant and each GPS warrant were primarily based upon the information provided by the CI working with the agents in this case. The affidavit included with the application for the home and vehicle warrant was based on information gathered as a result of the prior warrants, along with subsequent information provided by the CI. Therefore, the essential question that faces the Court is whether the information provided by the CI was sufficient to create probable cause to support the issuance of the cell phone warrant and GPS warrants.

"In determining whether probable cause exists to support a search warrant, the magistrate must 'make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit . . . there is a fair probability that contraband or evidence of a crime will be found in

a particular place.'" *United States v. Bass*, 785 F.3d 1043, 1048-49 (6th Cir.), *cert. denied,* 136 S. Ct. 192 (2015) (quoting *Gates*, 462 U.S. at 238). In making a determination of whether an affidavit established probable cause, the reviewing court must limit its review to the four-corners of the affidavit. *United States v. Brooks*, 594 F.3d 488, 492 (6th Cir. 2010). "A magistrate's determination of probable cause is afforded great deference by the reviewing court," and such a finding should be reversed only if the search warrant was arbitrarily authorized. *United States v. Greene*, 250 F.3d 471, 478 (6th Cir. 2001); *United States v. Kinison*, 710 F.3d 678, 682 (6th Cir. 2013) ("[s]o long as the magistrate had a 'substantial basis for . . . conclud[ing]' that a search would uncover evidence of wrongdoing, the Fourth Amendment requires no more") (quoting *Gates*, 462 U.S. at 236).

Regarding probable cause specifically based on an informant's tip, "[a]t least three circumstances potentially bear on a probable-cause determination premised on an informant's tip: (1) the reliability of the informant; (2) the basis of the informant's knowledge; and (3) any police corroboration of the informant's tip." *United States v. Tillman*, 404 F. App'x 949, 951 (6th Cir. 2010) (citing *Gates* at 238, 241-42). However, "police corroboration is not necessary when the tip comes from a known reliable source who has personally observed criminal activity." *Id*. When an informant's credibility is adequately substantiated by the informant's prior track record, a reviewing court does "not necessarily require other indicia of reliability to find probable cause." *Id*. (internal citations omitted). "Unlike a tip from an anonymous informant, a tip from a known informant whose reputation can be assessed and who can be held responsible if her allegations turn out to be fabricated is far more trustworthy." *Id*. (citing *Florida v. J.L.*, 529 U.S. 266, 270 (2000)).

In an affidavit submitted when seeking a search warrant, "the affiant need only specify that the confidential informant has given accurate information in the past to qualify as reliable."

*Greene*, 250 F.3d at 480. In *Greene*, the affiant seeking a search warrant "averred that the confidential informant had assisted federal and state law enforcement officials in the past and this information had resulted in numerous felony arrests." *Id*. This, according to the Sixth Circuit, was enough for the issuing magistrate judge to have relied upon for the purposes of determining adequate probable cause existed to support the issuance of a search warrant. *Id*. (due to the confidential informant's past assistance of law enforcement officials, "the magistrate could reasonably have relied on the information gained from the confidential informant for the purposes of the search warrant.").

      Regarding the case at hand, the first warrant issued to monitor and track information obtained from Defendant's cell phone was based largely upon Agent Nelson's statement regarding his interaction with the CI. The CI was not an anonymous individual, but rather an individual known by officers as having participated in prior investigations. The affidavit for the cell phone warrant stated two other officers besides the affiant had deemed the CI reliable and trustworthy, and that the CI had participated in previous narcotics investigations for DART and for the Regional Narcotics Unit that led to the arrest and convictions of individuals who were distributing narcotics. (R. 19-1, at 5). Just as in *Greene*, this is information that the issuing magistrate judge could have reasonably relied upon for the purposes of the warrant. As for the basis of the informant's knowledge in this case, the CI had first-hand knowledge of the information provided to the investigating agents, as he had communications with Defendant via phone and text messages. (*Id*. at 6). Giving great deference to the Hamilton County Judge that issued the warrant, Defendant has not met his burden in showing his Fourth Amendment rights were violated by the issuance of the cell phone warrant.

As for police corroboration, the agents did verify the information provided by the CI. As Defendant notes, Agent Nelson conducted a records check and found Defendant had prior convictions for trafficking and possessing drugs in Hamilton County, Ohio. (R. 19-1, at 5). Further, Agent Nelson personally viewed the text messages between the CI and Defendant, which verified the phone number being used by Defendant and that the CI had contact with him. (*Id*. at 6). The agent also verified that the phone number for Defendant provided by the CI was administered and maintained by Sprint. (*Id*.). These actions bolstered the probable cause for the reviewing judge issuing the warrant.

The same holds true for the GPS warrants issued in Hamilton County and Boone County. Each GPS warrant was supported by an affidavit that included a substantially similar description of the agents' encounters with the CI in this case. Each warrant references the CI's involvement in a past narcotics investigation that led to the arrest and conviction of an individual who was distributing narcotics. (R. 19-2, at 2; R. 19-3, at 6). Again, in accordance with *Greene*, the issuing judge reasonably could have relied on this information gained from the CI for purposes of the issuance of the warrant.

As stated in the affidavit in support of the Ohio GPS warrant, Agent Nelson also verified the information pertaining to Defendant's vehicle after the CI told him Defendant drove a 2003 BMW X5. (R. 19-2, at 3). Agent Nelson conducted a records check and confirmed the vehicle was registered to Defendant. (*Id*.). He also observed Defendant exit his residence and enter the driver's side of the vehicle and leave the apartment complex driving the vehicle. (*Id*.). Agent Boyd's affidavit in support of the Kentucky GPS warrant reiterated this information, and also included a reference to the information gathered as a result of the prior cell phone warrant issued in Hamilton County, which information confirmed Defendant was present at the apartment

9

complex where Defendant's vehicle was observed. (R. 19-3, at 7). Giving great deference to the judges that issued each of the GPS warrants, the issuing judge could reasonably have relied on the statements regarding the CI's involvement in prior investigations in concluding probable cause existed to support the issuance of each warrant. The agents' verification of the information provided by the CI further supports the reliability of the CI and credibility of the information provided to support the issuance of the warrants. Therefore, Defendant's argument that no probable cause existed, and that consequently the aforementioned warrants should be invalidated, fails.

As for the June 29, 2017 warrant authorizing a search of Defendant's apartment and vehicle, the attached affidavit in support of the warrant contained a description of the investigation with facts substantially similar to the facts aforementioned. (R. 19-4, at 3-4). The affidavit also contained an account of a controlled buy that occurred between the CI and Defendant. (*Id*. at 4-5). Agents monitored a call between the CI and Defendant to arrange the time and place for the controlled buy. (*Id*. at 5). Agents conducted surveillance of Defendant prior to his departure to participate in the controlled buy. (*Id*.). Agents searched the CI and his/her vehicle prior to and following the controlled buy for contraband or currency, and neither were found. (*Id*.). GPS information placed Defendant's vehicle at the location of the controlled buy while the transaction occurred. (*Id*.). Such information is enough to support a finding of probable cause by the judge issuing the home and vehicle warrant.

### B.  The Fruit of the Poisonous Tree Doctrine Does Not Apply

The "exclusionary rule is supplemented by the 'fruit of the poisonous tree' doctrine, which bars the admissibility of evidence which police derivatively obtain from an unconstitutional search or seizure." *United States v. Pearce*, 531 F.3d 374, 381 (6th Cir. 2008) (citing *Wong Sun v. United*

*States*, 371 U.S. 471, 484-85 (1963)). In order to suppress evidence under the fruit of the poisonous tree doctrine in conjunction with a Fourth Amendment violation, a defendant must show more than "the mere fact that a constitutional violation was a 'but-for' cause of the police's obtaining the evidence." *Hudson v. Michigan*, 547 U.S. 586, 592 (2006) (internal quotations omitted). In such an instance, the question becomes "whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." *Id.* However, if the initial search was not illegal, then subsequent statements and evidence gathered from that search or later searches are not subject to suppression as fruit of the poisonous tree. *United States v. Westerlund*, 477 F. App'x 366, 369 (6th Cir. 2012).

As aforementioned, the affidavit in support of the June 29, 2017 warrant obtained from Boone County authorizing the search of Defendant's apartment and vehicle included substantially similar information as provided in the prior cell phone warrant and GPS warrants. (R. 19-4, at 3-4). For instance, the affidavit in support of the home and vehicle warrant included a description of Agent Nelson's contact with the CI and the action taken by Agent Nelson to corroborate the information provided by the CI. (*Id.*). The affidavit also stated that Agent Nelson relied on the information gathered as a result of the cell phone warrant to assist in his corroborating efforts. (*Id.* at 4). Therefore, due to the fruit of the poisonous tree doctrine, if the previous warrants were issued in violation of Defendant's Fourth Amendment rights, then the evidence gathered as a result of the warrant authorizing a search of Defendant's home and vehicle would have to be analyzed further to determine whether the evidence was obtained "by means sufficiently distinguishable to be purged of the primary taint." *See Westerlund*, 477 F. App'x at 369. However, as previously discussed, each of the prior warrants were adequately supported by probable cause, and therefore

11

the issuance and execution of the prior warrants did not violate Defendant's Fourth Amendment rights. Therefore, none of the three previously issued warrants taint the evidence and statements obtained as a result of the home and vehicle warrant. There can be no fruit of the poisonous tree when there is no poisonous tree. *Id*.

      **C.**    **Even if the warrants were not supported by probable cause, the evidence obtained as a result of the warrants would still be admissible based on the *Leon* good-faith exception.**

In its Response, the Government argues that the good-faith exception to the exclusionary rule would prohibit suppression even if this Court were to invalidate the warrants obtained in this case. (R. 19 at 1, 8-9) (citing *United States v. Leon*, 468 U.S. 897 (1984)). According to the Government, the officers involved in procuring and executing the warrants had an objectively reasonable belief that the warrants contained probable cause. (R. 19, at 9). In his Reply, Defendant devotes one paragraph to advancing an argument that the *Leon* good-faith exception to the exclusionary rule should not apply. Defendant argues agents' reliance upon the warrants was unreasonable, as the officers displayed a reckless disregard for substantiating the truth of statements made by the CI. (R. 20, at 3).

It is well established that a violation of the Fourth Amendment does not require suppression in every circumstance. *Herring v. United States*, 555 U.S. 135, 140 (2009). "For exclusion to be appropriate, the deterrence benefits of suppression must outweigh its heavy costs." *Davis v. United States*, 564 U.S. 229, 237 (2011) (citing *Herring*, 555 U.S. at 141). Suppression should be determined on a case-by-case basis and ordered "only in those unusual cases in which exclusion will further the purposes of the exclusionary rule." *Leon*, 468 U.S. at 918.

The purpose of the exclusionary rule is to deter future "*deliberate, reckless, or grossly negligent conduct*, or in some circumstances recurring or systematic negligence." *Herring*, 555

U.S. at 144 (emphasis added). "To trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system." *Id.*

In *Leon*, the United States Supreme Court set forth an exception to the exclusionary rule where "an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope." 468 U.S. at 920. However, *Leon* also set forth four situations in which the good-faith exception is inapplicable, which, if any were to apply, would lead to exclusion of the resulting evidence. *Id.* at 923. Those four situations are: 1) where "the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth," 2) "where the issuing magistrate wholly abandoned his judicial role," 3) where the warrant is "based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable," and 4) where the warrant is "so facially deficient . . . that the executing officers cannot reasonably presume it to be valid." *Id.* (internal citations omitted).

In previous cases within this circuit where the courts found the affidavits in support of warrants were so lacking in indicia of probable cause, the warrants at issue either contained uncorroborated information originally provided by an anonymous individual, or were lacking information known to the affiant that would call the reliability of the informant into question. *See United States v. Weaver*, 99 F.3d 1372 (6th Cir. 1996) (the *Leon* good-faith exception did not apply, as the detective-affiant took no steps to corroborate information provided to him by an informant who learned of the information from an anonymous individual); *see also United States v. West*, 520 F.3d 604, 611 (6th Cir. 2008) (the *Leon* good-faith exception did not apply because, although known to the affiant, the affidavit omitted facts discrediting information provided by a

13

known informant, such as a fruitless search of the area in which the informant claimed evidence of the crime was located, and details surrounding an interview with another witness that could not corroborate the informant's statements).

On the other hand, several courts within the Sixth Circuit have held the *Leon* good-faith exception precludes exclusion of evidence, or would preclude exclusion if the warrant were found to have lacked probable cause, where, as here, the informant previously provided information to officers that proved to be true and accurate. *See e.g. United States v. Pirtle*, 371 F. App'x 614, 616-17 (6th Cir. 2010); *United States v. May*, 399 F.3d 817, 826 (6th Cir. 2005). In *Pirtle*, the affiant stated in the affidavit that the informant had provided information in the past that proved to be true and correct. 371 F. App'x at 616. The court held that due to the reliability of the informant and the corroborative efforts by the experienced narcotics officer, "the warrant contained sufficient indicia of probable cause as demanded by *Leon*, and the evidence was properly admitted." *Id*. at 617. In *May*, the officer-affiant stated in the affidavit that the "cooperating source had provided assistance in unrelated drug investigation cases." 399 F.3d at 826. The court noted the information was provided by a reliable informant, and ruled "[t]he affidavit in this case, even if deemed to be insufficient to establish probable cause, was sufficient to fit within the good[-]faith exception of *Leon*." *Id.*

Here, unlike in *Weaver*, the information contained in the affidavit in support of the first warrant was provided by a reliable informant who had first-hand knowledge of the activities he alleged had occurred. (R. 19-1, at 5). As previously stated, also unlike the affiant in *Weaver*, Agent Nelson did take steps to corroborate the information provided by the informant, as he viewed the text messages sent to the informant by Defendant, and verified the phone number with the network provider. (*Id*. at 5-6). Agent Nelson also conducted a records check which revealed

14

Defendant's prior convictions for trafficking drugs in Hamilton County, Ohio. (*Id.*). A suspect's criminal history can provide additional indicia of reliability for the sake of establishing probable cause. *United States v. Martin*, 526 F.3d 926, 937 (6th Cir. 2008).

And unlike in *West*, Defendant does not argue that Agent Nelson omitted facts that would show the unreliability of the CI. Rather, Defendant merely argues the officers' acts or omissions show a reckless disregard for substantiating the truth of the CI's statements, without identifying what acts or failures to act actually evidence such reckless disregard. (R. 20, at 3). Therefore, the facts of this case more closely align to those in *Pirtle* and *May*, in which the courts referenced the reliability of the informant and found the affidavits would fit within the *Leon* good-faith exception even if the warrants lacked sufficient probable cause. The *Leon* good-faith exception would prevent suppression of evidence gathered as a result of the warrants issued and executed in this case, even were the Court to conclude probable cause for issuance of the warrants was lacking.

### D.     An evidentiary hearing is not necessary in this case

Defendant also seeks an evidentiary hearing in this matter. (R. 20, at 3-4). According to Defendant, "testimony of Agent Nelson and Agent Boyd is necessary for a proper adjudication of these motions." (R. 18, at 6). The Government asserts an evidentiary hearing is not required, as it contends there have been no "allegations of deliberate falsehood or reckless disregard for the truth," or any offer of proof to support such allegations. (R. 19, at 9-10).

To be entitled to a hearing regarding the veracity of an affidavit in support of a warrant, or a *Franks* hearing, based off of an affirmative misstatement, "a defendant must make a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and the allegedly false statement is necessary to the finding of probable cause." *United States v. Neal*, 577 F. App'x 434, 450 (6th

15

Cir. 2014) (citing *Franks v. Delaware*, 438 U.S. 154 (1978)). To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and . . . [t]here must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. *Franks*, 438 U.S. at 171

"Although material omissions from an affidavit may also provide a basis for a *Franks* hearing, this court has repeatedly held that there is a higher bar for obtaining a *Franks* hearing on the basis of an allegedly material omission as opposed to an allegedly false affirmative statement." *Id.* (citing *United States v. Fowler*, 535 F.3d 408, 415 (6th Cir. 2008)). "Allegations of material omission are held to a higher standard because of the potential for endless rounds of *Franks* hearings due to potentially endless conjecture about investigative leads, fragments of information, or other matter that might, if included, have redounded to defendant's benefit." *Fowler*, 535 F.3d at 415-16 (internal citations omitted). As stated in *Fowler*:

> the defendant is entitled to a hearing if and only if: (1) the defendant makes a substantial preliminary showing that the affiant engaged in deliberate falsehood or reckless disregard for the truth in omitting information from the affidavit, and (2) a finding of probable cause would not be supported by the affidavit if the omitted material were considered to be a part of it.

*Id.* at 415. Not all omissions rise to the level of warranting a *Franks* hearing, and there is "no clear list of what information the affiant must include, but the general idea is that the 'issuing judicial officer must be reasonably assured that the informant was credible and the information reliable.'" *United States v. Jones*, 533 F. App'x 562, 569 (6th Cir. 2013) (citing *United States v. Williams*, 224 F.3d 530, 532 (6th Cir. 2000)).

Here, Defendant has failed to satisfy either prong of the standard aforementioned. Defendant has not made a substantial preliminary showing that either Agent Nelson or Agent Boyd engaged in a deliberate falsehood or a reckless disregard for the truth in any of the affidavits in

16

this case. Defendant does not point to any information specifically omitted from any of the affidavits at issue, or make any offer of proof that such omissions were made with reckless disregard for the truth. Rather, Defendant merely asserts his position that the CI was in trouble and needed to help himself out, and provides no facts or further allegations in support of this assertion. (R. 18, at 6). Even if the CI was motivated by the need to help himself out of trouble, the officers' omission of that fact would not be a display of a reckless disregard for the truth. "Where, as here, the informant's reliability and credibility are otherwise established, defendant bears the very heavy burden of showing how mere impeachment material could be so devastating that its omission constituted a reckless disregard for the truth." *United States v. Lowry*, 961 F.2d 1579 (6th Cir. 1992). As previously stated, the officers included in their affidavits enough information for the issuing judge to conclude the informant was reliable, and therefore, a *Franks* hearing is not warranted. *See Jones*, 533 F. App'x at 568-69 (concluding that no *Franks* hearing was warranted where the affidavit in question "did not include information on the CI's meth addiction or criminal history, [but] it contained other information suggesting that the information was credible."). Therefore, Defendant has failed to satisfy the first prong aforementioned.

Defendant also has not shown "a finding of probable cause would not be supported by the affidavit if the omitted material were considered to be a part of it." *Fowler*, 535 F.3d at 415. Defendant argues the CI's current criminal situation must be included in the affidavit. "The affidavit is judged on the adequacy of what it does contain, not on what it lacks, or on what a critic might say should have been added." *United States v. Allen*, 211 F.3d 970, 975 (6th Cir. 2000). Even if the affiants in the case at hand explained the CI's motivation for cooperating with the agents, such inclusion would not have undermined any probable cause that otherwise existed. "It is often people involved in criminal activities themselves that have the most knowledge about other

17

criminal activities." *United States v. Martin*, 920 F.2d 393, 398-99 (6th Cir. 1990). Therefore, even if Defendant were correct in arguing the CI was in trouble and needed to help himself out, and the agents that provided the affidavits at issue were aware of this but did not include such in their affidavits, Defendant still would not be entitled to a *Franks* hearing, as he has failed to make "a substantial preliminary showing that the affiant engaged in deliberate falsehood or reckless disregard for the truth in omitting information from the affidavit," and has failed to show that "a finding of probable cause would not be supported by the affidavit if the omitted material were considered to be a part of it." *Fowler*, 535 F.3d at 415. As Defendant has failed to satisfy either prong of the standard set forth above, a *Franks* hearing is not warranted in this case.

### III. CONCLUSION

For the reasons stated herein,

**IT IS RECOMMENDED** that Defendant's Motion to Suppress and Supplemental Motion to Suppress and request therein for evidentiary hearing (R. 14; R. 18) be **denied.**

Specific objections to this Report and Recommendation must be filed within **fourteen (14) days** of the date of service or further appeal is waived. 28 U.S.C. § 636(b)(1)(C); Fed. R. Crim. P. 59(b)(2); *Thomas v. Arn*, 728 F.2d 813, 815 (6th Cir. 1984), *aff'd*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Dated this 9th day of February, 2018.



Signed By:
*Candace J. Smith*
United States Magistrate Judge

J:\DATA\Orders\criminal cov\2017\17-34-DLB-CJS Crawford M to suppress R&R.docx