UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
COVINGTON

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) ) ) | |
| Plaintiff/Respondent, | ) ) | No. 2:17-CR-34-DLB-HAI |
| v. | ) ) | RECOMMENDED DISPOSITION |
| RICHARD R. CRAWFORD, | ) ) ) | |
| Defendant/Movant. | ) ) | |

\*\*\*  \*\*\*  \*\*\*  \*\*\*

Federal prisoner Richard R. Crawford moves *pro se* to vacate his sentence under 28 U.S.C. § 2255. The motion is accompanied by an affidavit, memorandum, and exhibits. D.E. 99. It was filed under the mailbox rule on May 1, 2020.

## I. Background

Crawford was indicted in September 2017 for (1) distributing cocaine, (2) possessing with intent to distribute cocaine, and (3) possessing with intent to distribute more than 28 grams of a mixture containing crack cocaine. D.E. 1. He was represented by appointed counsel David F. Fessler. There was a good deal of pre-trial activity. First, in November 2017, Crawford moved:

> to suppress all evidence obtained as a result of the following:
>
> · Cellular Phone Ping Order obtained on June 5, 2017 (OH)
> · GPS Order obtained on or about June 12, 2017 (KY)
> · Search Warrant issued to search Defendant's home on June 29, 2017 (KY)
> · Any statement given by the Defendant on June 29, 2017 (KY)

D.E. 14. Magistrate Judge Smith held a hearing and ordered supplementation of the motion to suppress. D.E. 17. That supplement was filed (D.E. 18), responded to (D.E. 19), and replied to

(D.E. 20).  Judge Smith recommended denial of the motion.  D.E. 21.  Crawford objected (D.E. 22), and the government responded (D.E. 26).

Crawford then filed a second motion to suppress, this one targeting "incriminating statements made during the execution of a search warrant" at his residence.  D.E. 28.  The government responded (D.E. 29) and Crawford replied (D.E. 31).  Judge Smith held an evidentiary hearing on that motion to suppress in April 2018.  D.E. 34.  A transcript was filed (D.E. 36), and Judge Smith issued a recommendation that the motion be denied (D.E. 37).  Crawford objected (D.E. 38) and the government responded (D.E. 40).  In July 2018, Judge Bunning adopted both of Judge Smith's recommended dispositions and denied both motions to suppress.  D.E. 42.

After a three-day trial in August 2018, a jury found Crawford guilty of Count One and guilty of lesser-included offenses on Counts Two and Three (possession rather than possession with intent to distribute).  D.E. 61.  One of the witnesses at trial was Jerry Heard, a confidential informant who conducted a controlled drug buy with Crawford at a gym.  Agents utilized that controlled buy to establish probable cause for the search warrant of Crawford's residence.  An audio recording of the controlled buy exists, but it is of poor quality.  The recording was not played at trial.

Crawford's counsel filed a sentencing memorandum.  D.E. 66.  Judgment was entered on November 28, 2018.  Crawford was sentenced to 216 months' imprisonment on Count One (with 36 months each on Counts Two and Three running concurrently with each other and with Count One).  D.E. 70.

Crawford appealed, with new counsel.  He raised four claims:  (1) that the district court erred in denying his motions to suppress the search warrants, (2) that the district court erred

when it denied his motion to suppress his statements, (3) that the prosecutor's examination of the confidential informant unfairly contained "statements and questions" that bolstered the informant's credibility, and (4) that the district court erred in denying a *Franks* hearing.  On November 18, 2019, the Court of Appeals affirmed his convictions in a published opinion.  D.E. 92, *United States v. Crawford*, 943 F.3d 297 (6th Cir. 2019).  The appellate court upheld the search warrants and the admission of Crawford's incriminating statements and found Crawford was not entitled to a *Franks* hearing.  It also found no improper bolstering of the confidential informant.  *Id.*

## II.  Crawford's Motion

On May 4, 2020, the Court received Crawford's *pro se* § 2255 motion.  D.E. 99.  After the government was ordered to respond to the motion (D.E. 101), the government moved to strike Crawford's memo for exceeding the page limit under the local rules (D.E. 102).  Rather than striking the document, the Court ordered that the government need only respond to certain claims because several of Crawford's claims were capable of being dismissed upon initial review.  D.E. 105.  It appears that Crawford mistook the government's draft order (to strike his memorandum) as an order from Judge Bunning granting the motion to strike, and Crawford filed a second, shorter memorandum, as discussed in Docket Entry 122.  Thus, in addition to his long memorandum at Docket Entry 99-6, Crawford also has a shorter memorandum at Docket Entry 114 (which replaced an earlier version of the shorter memorandum at Docket Entry 104—an entry the Court will not consider).  In addition to these two operable memoranda (D.E. 99-6 and 114), Crawford also made several arguments in a motion at Docket Entry 110.  In that filing, Crawford appeared to be objecting to the Court's initial analyses at Docket Entry 105.  But, as Docket Entry 105 was not a final recommendation to the district judge, the objections were

3

premature. The Court now takes those arguments into consideration. Crawford has also filed some court records from the state of Kentucky and a copy of a 2005 judgment in an Ohio case (D.E. 114-1), which will become relevant.

Crawford's original § 2255 motion and memorandum allege eleven grounds for relief:

(1)    He received ineffective assistance of counsel ("IAC") at trial when his attorney failed to impeach the informant's testimony with prior inconsistent or contradictory statements that had been recorded by law enforcement. D.E. 99-6 at 1.[1] This ground corresponds to Ground Three of Crawford's shorter memorandum. D.E. 114 at 3.

(2)    He received IAC in relation to his motion to suppress the search warrant for his apartment and vehicle. D.E. 99-6 at 11. This includes a failure to obtain a *Franks* hearing. *Id.* at 16-20. This ground corresponds to Ground One of Crawford's shorter memorandum. D.E. 114 at 3.

(3)    Defense counsel was ineffective for failing to move to suppress "evidence seized and/or incriminating statements made by the petitioner" following his arrest. D.E. 99-6 at 22.

(4)    Defense counsel was ineffective for failing to argue that the search warrant was an invalid anticipatory warrant. *Id.* at 25.

(5)    Crawford received IAC when counsel "allow[ed] the suppression hearing to be conducted without testimony from a crucial eyewitness[.]" *Id.* at 27. This ground corresponds to Ground Two of Crawford's shorter memorandum. D.E. 114 at 3.

(6)    Counsel was ineffective for failing to move to prohibit the informant's testimony at trial. D.E. 99-6 at 34.

(7)    Counsel was ineffective for failing to challenge the "constructive possession" jury instruction. *Id.* at 46.

(8)    Counsel was ineffective for failing to challenge Crawford's prior convictions as qualifying predicates for his career-offender sentencing enhancement. *Id.* at 48.

(9)    Appellate counsel was ineffective in relation to Crawford's challenge to his career-offender sentencing enhancement. *Id.* at 52. This ground corresponds to Ground Four of Crawford's shorter memorandum. D.E. 114 at 3.

---

[1] Page number references are to the page numbers generated by ECF.

(10)   An intervening change in law undermines his career-offender sentencing enhancement.  D.E. 99-6 at 56.  This ground corresponds to Ground Five of Crawford's shorter memorandum.  D.E. 114 at 3.

(11)   Various instances of IAC at trial amounted to "cumulative error" that prejudiced Crawford.  D.E. 99-6 at 57.

The Court, as it has repeatedly stated, intends to carefully consider every single claim raised by Crawford in his original motion and memorandum (D.E. 99, including the affidavit and exhibits), his shorter memorandum (D.E. 114), and his "objections" at Docket Entry 110.

The government responded in opposition and attached an affidavit from Crawford's trial attorney.  D.E. 119.  Crawford replied.  D.E. 123.  To the extent that there are *factual* conflicts between Crawford's filing and his counsel's affidavit, the Court will assume for the sake of this motion that Crawford's *factual* assertions (but not necessarily his opinions, interpretations, and legal conclusions) are correct.  Even assuming Crawford is correct on his facts, he is not entitled to relief on any of his claims.

### III.  General Legal Standards

Under § 2255, a federal prisoner may seek habeas relief because his sentence violates the Constitution or federal law, the federal court lacked jurisdiction to impose such a sentence, or the sentence exceeds the maximum authorized by law.  28 U.S.C. § 2255.  To prevail on a § 2255 motion alleging constitutional error, a defendant must establish that the error had a "substantial and injurious effect or influence on the proceedings."  *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)).  A § 2255 movant bears the burden of proving his or her allegations by a preponderance of the evidence.  *McQueen v. United States*, 58 F. App'x 73, 76 (6th Cir. 2003) (per curiam).

The Court recognizes that Crawford is proceeding *pro se*, without the assistance of an attorney.  The Court construes *pro se* motions more leniently than motions prepared by lawyers.

*Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Castro v. United States*, 540 U.S. 375, 381-83 (2003).

Several of Crawford's grounds for relief allege violations of his Sixth Amendment right to effective representation. To successfully assert an IAC claim, a defendant must prove both deficient performance and prejudice. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006). To prove deficient performance, a defendant must show "that counsel's representation fell below an objective standard of reasonableness" as measured under "prevailing professional norms" and evaluated "considering all the circumstances." *Strickland*, 466 U.S. at 688. But "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id*. at 689 (internal quotations omitted). "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Id.* at 690-91.

In order to prove prejudice, a movant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Thus, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691. When evaluating prejudice, courts generally must consider the "totality of the evidence." *Strickland*, 466 U.S. at 695. Courts may approach the *Strickland* analysis in any order, and an insufficient showing on either prong ends the inquiry.

*Id.* at 697.  To show prejudice in the sentencing context, a movant must establish that his "sentence was increased by the deficient performance of his attorney."  *Spencer v. Booker*, 254 F. App'x 520, 525 (6th Cir. 2007) (citing *Glover v. United States*, 531 U.S. 198, 200 (2001)).

"[C]ounsel cannot be ineffective for a failure to raise an issue that lacks merit."  *Sutton v. Bell*, 645 F.3d 752, 755 (6th Cir. 2011) (quoting *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001)).

## IV.  Grounds Foreclosed by Appellate Rulings

Four of Crawford's original eleven claims (Grounds Two, Three, Four, and Five) are essentially foreclosed by the results of Crawford's appeal.  Absent an exceptional circumstance, such as an intervening change in the law, petitioners may not use a § 2255 motion to relegate an issue that was raised on appeal.  *Wright v. United States*, 182 F.3d 458, 467 (6th Cir. 1999); *DuPont v. United States*, 76 F.3d 108, 110 (6th Cir. 1996).  Here, the Sixth Circuit has already held that the three search warrants were valid, that Crawford's *Miranda* rights were not violated, and that no *Franks* hearing on the search warrants was warranted.  D.E. 92-1.  Because the Court of Appeals has already determined that the three warrants were valid and that Crawford's *Miranda* rights were not violated, Crawford cannot show that he was prejudiced by any actions of his attorney in regard to those issues.

### Ground Two

Specifically, Crawford argues in Ground Two (Ground One in his shorter memorandum) that counsel was ineffective for failing to successfully pursue a *Franks* hearing.  D.E. 99-6 at 16-20; D.E. 114 at 3-4.  *See Franks v. Delaware*, 438 U.S. 154 (1978).

When determining whether an affidavit establishes probable cause, courts typically look only to the four corners of the affidavit.  *United States v. Abernathy*, 843 F.3d 243, 249 (6th Cir.

2016).  A defendant wishing to venture beyond the affidavit bears the "heavy burden" of demonstrating the need for a *Franks* hearing.  *United States v. Bateman*, 945 F.3d 997, 1008 (6th Cir. 2019).  The *Franks* standard recognizes that a presumption of validity exists with respect to the affidavit supporting the search warrant.  *Id.*

> In a *Franks* hearing, a court determines whether to suppress the fruits of an executed search warrant, where the warrant was the result of a false statement. [*Franks*, 438 U.S. at 171].  To demonstrate entitlement to the hearing, a defendant must make a "substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit."  *Id.* at 155-56.  "The allegedly false statement," moreover, must be "necessary to the finding of probable cause."  *Id.*
>
> A *Franks* analysis turns on two questions of fact, and one of law.  The two questions of fact:  One, is there a false statement included in an affidavit?  If so, then two, how culpable is the affiant officer in including that statement in the affidavit?  Where the affidavit does include a false statement, and where the officer making the statement was culpable in doing so, then the court turns to a question of law:  After excising the false statement, is there sufficient information in the affidavit to constitute probable cause to issue a warrant?  *Id.* at 171.

*United States v. Crawford*, 943 F.3d 297, 309 (6th Cir. 2019); *see also Butler v. City of Detroit*, 936 F.3d 410, 418 (6th Cir. 2019).  An officer's statement is only considered to be issued with "reckless disregard for the truth" if the defendant shows the affiant subjectively entertained "serious doubts as to the truth" of his allegations.  *Bateman*, 945 F.3d at 1008.  "Allegations of [an officer's] negligence or innocent mistake are insufficient."  *Franks*, 438 U.S. at 171.

Here, the Court of Appeals specifically found that Crawford was not entitled to a *Franks* hearing.  D.E. 92-1 at 12; *United States v. Crawford*, 943 F.3d 297, 309 (6th Cir. 2019). Crawford argued on appeal that a statement in the affidavit concerning a phone call between Crawford and the informant which "assert[ed] that [the informant] and Crawford arranged to meet for a drug transaction" was knowingly false.  *Id.*  Crawford specifies now that the call, as recorded, "merely reflects that they planned to meet at the gym at 2:00 p.m."  D.E. 99-6 at 2; *see*

*also id*. at 14.  The obvious factual problem here is that, although drugs are not mentioned during the call, the controlled buy actually took place and Heard returned from the gym with cocaine.

Critically, the appellate court found that, even if the challenged statement in the warrant affidavit was knowingly false, its removal from the affidavit would fail to undermine probable cause.  D.E. 92-1 at 13; *Crawford*, 943 F.3d at 309-10.  "[A]fter excising any mention of the phone call, the district court still had sufficient evidence upon which to find probable cause."  D.E. 92-1 at 13; *Crawford*, 943 F.3d at 310.  Counsel could not be ineffective for pursuing a meritless claim.

Crawford also argues that the warrant affidavit omitted the fact that the agents accused the informant of cheating them by not handing over all the cocaine he received from Crawford, as suggested by statements on the recording.  D.E. 99-6 at 19-20.  Assuming Crawford is correctly interpreting the recording, it is by no means clear how omitting this exchange between the agents and the informant would warrant a *Franks* hearing.  But again, this issue has already been decided on appeal.

Also under Ground Two, Crawford attacks the residential search warrant directly.  This search warrant followed a cellphone-tracking warrant, a warrant to track his vehicle using GPS, and the controlled buy at the gym.  Crawford argues probable cause was lacking for the residential warrant because probable cause was based on statements from an unreliable informant.  D.E. 99-6 at 11.  He argues that, had counsel done a better job with the briefs and evidentiary hearing, the fruits of the search would have been suppressed.

The Court of Appeals summarized the warrant and its fruits:

Two days [after the controlled buy, Agent Chris] Boyd obtained a third search warrant regarding Crawford.  This one was for Crawford's apartment.  In the supporting affidavit, Boyd included the facts used to obtain the prior warrants as well as the details of the controlled buy.  With respect to the latter, the affidavit

noted that the call participants "discussed meeting in order for Crawford to sell [Heard] cocaine." The affidavit also set forth the details of the buy itself.

Later that day, officers executed the warrant and searched Crawford's apartment. During the search, officers found cocaine. They also found $3,705 in cash, which included $1,390 in tagged bills used in the controlled buy. Crawford was detained, Mirandized, and interviewed by officers at the scene. Crawford incriminated himself, admitting that he sold on consignment an ounce of cocaine to "Jerry," and that he had placed cocaine under his sink.

*Crawford*, 943 F.3d at 303-04. Concerning this third warrant, the Sixth Circuit found that Heard, the informant, "was demonstrably a reliable source of information, as reflected in the first two warrants. And the third warrant, it bears adding, was also supported by Heard's first-hand account of purchasing cocaine directly from Crawford." *Id.* at 309. Accordingly, the Court of Appeals rejected Crawford's argument that the warrant lacked a sufficient nexus to his home. *Id*.

### Ground Three

Crawford's argument on Ground Three was that his arrest (which happened as law enforcement moved in to execute the search warrant) was warrantless and not based on probable cause, therefore the evidence subsequently seized and statements subsequently made by Crawford should be suppressed. D.E. 99-6 at 22. But Crawford was detained in conjunction with the search warrant, not arrested. *See id* at 26 ("Crawford was only being 'detained' until completion of the search warrant."). The physical evidence gathered were the fruits of the search warrant, not the arrest. And the validity of the search warrant has already been upheld on appeal. Crawford's statements were the fruits of the interview by agents. The admissibility of those statements has also been upheld on appeal. *United States v. Crawford*, 943 F.3d 297, 310-11 (6th Cir. 2019). Therefore, Crawford's Ground Three fails. The issues underlying his IAC claim were already decided on appeal.

**Ground Four**

In Ground Four, Crawford argues that his lawyer should have attacked the residential search warrant as an invalid "anticipatory warrant." D.E. 99-6 at 25-26. "An anticipatory search warrant differs from a traditional search warrant. Traditional warrants issue upon a showing of probable cause. By contrast, an anticipatory warrant only becomes effective upon the happening of some future event—a "triggering condition"—which establishes probable cause for the search." *United States v. Perkins*, 887 F.3d 272, 274 (6th Cir. 2018). The warrant to search Crawford's residence simply does not fit the definition of an anticipatory warrant. The facts supporting probable cause were entirely past events. And again, the warrant has been upheld on appeal. Counsel could not have been ineffective for failing to raise a frivolous argument.

**Ground Five**

Ground Five (which corresponds to Ground Two in the shorter memorandum) concerns Crawford's *Miranda* issue. Crawford argues his counsel was ineffective for failing to call as a witness at the evidentiary hearing Boone County Sheriff's Deputy Canfield—the officer who watched Crawford while his residence was being searched. D.E. 99-6 at 27-33. Crawford argues that, while he was being overseen by Canfield, he was interrogated by Agent Boyd and others. Canfield recorded these interviews on his bodycam, but the recording does not include any *Miranda* warnings. *Id*. at 27. The Court of Appeals upheld the district court's finding that the *Miranda* warnings were given, but Deputy Canfield's recording did not begin until afterward. *United States v. Crawford*, 943 F.3d 297, 311 (6th Cir. 2019).

The Court of Appeals explained: "Before the district court, the parties presented dueling stories over whether the officers in fact read Crawford his *Miranda* rights. Crawford testified they did not. But both officers testified that they did. The district court credited the officers'

11

testimony and concluded that Crawford was Mirandized prior to incriminating himself." *Crawford*, 943 F.3d at 310. Although Deputy Canfield mentioned in the recording that he did not know whether Crawford had been Mirandized, the other two officers testified unequivocally that they did Mirandize him. *Id*. It is not at all clear how calling Canfield to testify would have yielded a different result. Crawford's counsel explained that he did not call Canfield to testify at the evidentiary hearing because Canfield's statements made to Crawford during the residential search were memorialized on the recording. D.E. 119-1 at 10. Counsel explains he "had all he wanted and needed from Canfield on the recording," so "Canfield's presence was not necessary" and calling Canfield would have given him "an opportunity to try and 'soften' his statements." *Id*.; *see also* D.E. 28 at 3 (motion to suppress, paraphrasing the recording). This was a reasonable strategic decision and cannot support a finding of IAC.

## V. The Informant's Trial Testimony (Grounds One and Six, plus Eleven)

Crawford argues in Ground One that counsel should have used the audio recording to impeach Heard, the confidential informant. He argues in Ground Six that counsel should have prevented Heard from testifying.

### Ground One

Under Ground One (which roughly corresponds to Ground Three in the shorter memorandum), Crawford argues that defense counsel had a duty to hire a forensic expert to analyze the audio recording of the controlled drug buy at the gym. Had counsel done this, Crawford argues, he would have found evidence to impeach the informant at trial, including evidence that Heard had been assaulted by the officers overseeing the transaction. D.E. 114 at 4-9. Crawford believes the informant made statements on the recording that are inconsistent with

his trial testimony.  D.E. 99-6 at 9.  He points out that counsel told the jury he hoped the government played the recording.  *Id*. at 35-36; D.E. 114 at 12.

Counsel explains that he did not use the recording at trial because (1) he did not think Heard made any statements on the recording that were inconsistent with his trial testimony, (2) "the quality of the recording was so bad that one could not accurately ascertain what statement was being made nor who made it," (3) Crawford made inconsistent statements to counsel about what was said on the recording, and (4) the recording, if admissible, contained statements that "might have been construed as evidence of guilt."[2]  D.E. 119-1 at 7-8.  Counsel insists that a review of the trial transcript will show he "very aggressively went after the confidential informant attacking his credibility, his motives, his prior record, etc."  *Id.*  Further, counsel admits he told the jury he hoped the government would play the recording.  But counsel says he "felt sure the United States would not play [it.]"  He says his statement to the jury that he hoped the United States played the recording "was merely trial strategy to cause and/or create deflection or doubt."  *Id.*  The decision not to play the recording (and to use its anticipated absence to undermine the government's case) was a reasonable strategic decision and does not support a finding of deficient performance.

Crawford argues he believes Heard covered the hidden microphone and counsel should have introduced this fact at trial.  Counsel states he is not sure whether Heard covered the microphone; this was just one possible explanation for the recording's poor quality.  D.E. 119-1 at 8-9.  Officer Nelson, who was listening to the controlled buy, testified at trial that the audio "was unintelligible.  You could hear noise and possible conversation, but . . . I couldn't make it

---

[2] On this last point, Crawford himself notes that counsel told him he did not intend to play the recording at trial because Crawford could be heard on the recording referencing his "gym bag."  D.E. 114 at 12.

out." D.E. 91 at 65. Agent Boyd likewise testified the audio was "terrible," possibly because it can be bad "any time we're inside of a concrete structure or something like that." *Id.* at 112.

Assuming Heard covered the microphone, this would arguably impair his credibility. But it would by no means affect the outcome of the trial, where drugs were found at Crawford's residence and Crawford admitting selling (or at least "fronting") cocaine to Heard.[3] In other words, Crawford's admission along with the cocaine found at his residence confirm that Heard was credible in his statement that Heard obtained drugs from Crawford. Again, counsel was also concerned that the recording could be interpreted as incriminating Crawford. D.E. 119-1 at 8.

"[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland v. Washington*, 466 U.S. 668, 688 (1984) (internal quotations omitted). "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable[.]" *Id.* at 690-91.

Given this deferential standard, Crawford does not show counsel was ineffective for failing to have the recording analyzed and/or played at trial. Counsel did attempt to discredit Heard, but this was clearly an uphill battle when Crawford admitted (while he was detained during the search of his residence) that he had given Heard the cocaine.

Further, although Crawford argues that his counsel should have used the recording to establish that Heard was an unreliable informant (D.E. 99-6 at 9, 41), the Court of Appeals already determined Heard was "demonstrably . . . reliable" in Crawford's case. *United States v.*

---

[3] Agent Boyd testified at the suppression hearing that Crawford "stated that he had fronted an ounce of cocaine to a subject named Jerry. When I say fronted, . . . it's basically giving it to him on consignment." D.E. 36 at 36. And Crawford testified at the hearing that he had made that admission. *Id.* at 64. Agent Boyd testified at trial that Crawford said "he gave Jerry an ounce a couple of days ago. And then we asked an ounce of what, and he stated an ounce of coke." D.E. 91 at 132.

*Crawford*, 943 F.3d 297, 309 (6th Cir. 2019).  Counsel cannot be faulted for failing to pursue an argument that contradicts what has already been decided by the Court of Appeals.

### Ground Six

Ground Six argues that counsel should have filed a motion *in limine* to prohibit Heard from testifying at trial.  D.E. 99-6 at 34.  Crawford believes that Heard at times covered the hidden microphone.  He argues that Heard's manipulation of the recording shows Heard was untrustworthy and unreliable.  *Id*. at 34.  But untrustworthy and unreliable people testify all the time.  Assuming Heard was untrustworthy and unreliable (and that he intentionally covered the microphone, as Crawford insists), it is not clear what legal basis would exist to prevent Heard's testimony.  Counsel states he knew of no legal basis to move to exclude Heard's testimony.  Thus, counsel's job was "to attack the confidential informant on cross-examination, which [counsel] zealously did."  D.E. 119-1 at 9.  Crawford cites Federal Rules of Evidence 609 and 613.  D.E. 99-6 at 40, 43.  Rule 609 concerns the ability to impeach a witness with the witness's prior convictions.  It has no applicability to the recording at issue.  Rule 613 concerns impeachment by prior inconsistent statements.  Even assuming Heard manipulated the microphone, Crawford does not point to any particular statements by Heard on the recording that were inconsistent with his trial testimony.  Crawford also cites the "best evidence rule" (D.E. 99-6 at 43; D.E. 114 at 14), but that rule would only come into play if some non-original version of the recording had been entered into evidence.  *United States v. Branham*, 97 F.3d 835, 853 (6th Cir. 1996) (explaining that a recording need not be played if the person speaking on the recording testifies and that playing the recording first would not prevent the speaker's testimony at trial).  Crawford cannot show deficient performance or prejudice for failure to file a frivolous motion.

## VI.  Grounds Seven and Eleven (Miscellaneous).

### Ground Seven

Concerning Ground Seven, Crawford argues that the trial court erred in providing a "constructive possession" jury instruction, and counsel was ineffective for allowing this instruction.  D.E. 99-6 at 46-47.  Relying on *United States v. James*, 819 F.2d 674 (6th Cir. 1987), Crawford argues that the trial evidence established he "was either in actual possession of cocaine, or not guilty thereof."  D.E. 99-6 at 46.  But Crawford's case is not like *James*.  In *James*, the defendant flatly denied possession and the government's only theory was actual possession.  Instead, Crawford admitted in his own trial testimony that he physically possessed the cocaine.  *See* D.E. 86 at 134.  Crawford's case is perfectly in line with *United States v. Taylor*, 800 F.3d 701, 709-10 (6th Cir. 2015), and *Dawson v. United States*, 702 F.3d 347, 349-50 (6th Cir. 2012).  In those cases, the Court found that any error in issuing a constructive-possession instruction was harmless because there was no evidence on which the jury could have found mere constructive possession.  Crawford cannot prove prejudice on a harmless error, so he does not establish IAC on Ground Seven.

### Ground Eleven

Crawford argues that, even if no single instance of ineffective assistance was prejudicial enough to warrant relief, he suffered "cumulative error."  D.E. 99-6 at 57-63; D.E. 114 at 15.  Here, Crawford has not established any instances of ineffective assistance, so there are no errors to cumulate.

Crawford also repeatedly cites the Supreme Court case of *United States v. Cronic*, 466 U.S. 648, 659 (1984).  The Supreme Court in *Cronic* observed that "if counsel entirely fails to subject the prosecution's case to meaningful adversarial testing, then there has been a denial of

16

Sixth Amendment rights that makes the adversary process itself presumptively unreliable."  No specific showing of prejudice is necessary in such circumstances.  *Cronic*, 466 U.S. at 659.  Crawford's case is nothing like *Cronic*.  Crawford had a highly experienced attorney who vigorously litigated the case pretrial, through trial, and at sentencing.  Although Crawford in hindsight disagrees with some of his attorney's strategic decisions, in no way was Crawford denied adversarial testing of the government's case.

### VII.  Crawford's Prior Drug Felonies (Grounds Eight, Nine, and Ten)

Three Grounds remained unaddressed, and they all relate to Crawford's career-offender sentencing enhancement.  Paragraph 25 of Crawford's Presentence Report (PSR) explains the basis for applying this enhancement in Crawford's case:

> **Chapter Four Enhancement:** The defendant was at least 18 years old at the time of the instant offense of conviction; the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense *(Boone County Circuit Court, Docket No.: 11-CR-117 and Hamilton County Common Pleas Court, Docket No.: B 0906422 or Hamilton County Common Pleas Court, Docket No.: B 0404141);* therefore, the defendant is a career offender.  The offense level for a career offender is 34 because the statutory maximum term of imprisonment is 25 years or more, pursuant to U.S.S.G. § 4B1.1(b)(2).

D.E. 73 at 8.

Grounds Eight, Nine, and Ten of Crawford's original § 2255 motion (and Grounds Four and Five of his shorter memorandum) hinge on whether Crawford's prior Ohio state convictions for cocaine trafficking qualify as predicate crimes to support the career offender enhancement under USSG §§ 4B1.1 and 4B1.2.  Crawford argues in his shorter memorandum that while his appeal was pending, "the Sixth Circuit decided several cases relevant to Crawford's predicates, in the light of [*United States v. Havis*, 927 F.3d. 382 (6th Cir. 2019),] relevant to the petitioner's

17

predicate under O.R.C. 2925.03." D.E. 114 at 16. He identifies several cases that were remanded, on direct review, for reconsideration under *Havis*. *Id*.

> Under USSG § 4B1.1(a),
>
> A defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

Section 4B1.2(b) defines "controlled substance offense" as

> an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense.

The Sixth Circuit in *Havis* held that "attempt crimes do not qualify as controlled substance offenses." *Havis*, 927 F.3d at 387. *Havis* was followed by *Cavazos*, in which the Sixth Circuit held that "an offer to sell is properly considered an attempt to transfer a controlled substance," meaning that a conviction for *offering to sell* a controlled substance is not a "controlled substance offense." *United States v. Cavazos*, 950 F.3d 329, 336 (6th Cir. 2020).

### A.

Before proceeding further, the Court notes that Crawford cannot attack his career-offender enhancement under *Havis* via a post-conviction motion. Non-constitutional attacks on career-offender designations are not cognizable under § 2255. *United States v. Thomas*, No. 6:08-CR-33-GFVT-CJS-1, 2019 WL 6702550, at *1 (E.D. Ky. Dec. 9, 2019). A claim under *Havis* "is cognizable only on direct—not collateral—review." *United States v. Brown*, No. 19-6269, 2020 WL 2128806, at *3 (6th Cir. Feb. 26, 2020); *accord Bullard v. United States*, 937

F.3d 654, 656-57 (6th Cir. 2019), *cert. denied*, No. 19-8199, 2020 WL 2515775 (U.S. May 18, 2020).

> Petitioner cannot invoke *Havis* to attack the qualifying status of his convictions in the current proceeding, *i.e.*, a collateral attack on his conviction and sentence. *See Bullard*[, 937 F.3d at 661] (noting that a petitioner "cannot use § 2255—or our decision in *Havis*—to attack collaterally his designation as career offender under the Sentencing Guidelines."); *Chapman v. Terris*, No. 19-11247, 2019 WL 5733708, at *2 (E.D. Mich. Nov. 5, 2019) ("Petitioner is unable to avail himself of the *Havis* decision because it has not been made retroactive to cases on collateral review, including motions to vacate sentence." (citing, *inter alia*, *Bullard*, 937 F.3d at 657)).

*Johnson v. United States*, No. 3:19-CV-704, 2020 WL 3964204, at *3 (M.D. Tenn. July 13, 2020); *accord Lynch v. Young*, No. 5:19-CV-849, 2020 WL 5882205, at *5 (S.D.W. Va. Aug. 5, 2020), *report and recommendation adopted*, 2020 WL 5834350 (S.D.W. Va. Sept. 30, 2020).

*Havis* "has not been made retroactive to cases on collateral review, including motions to vacate sentence." *Cain v. United States*, No. 2:09-CR-031, 2020 WL 3513417, at *3 (E.D. Tenn. June 29, 2020) (citing *Church v. United States*, No. 3:17-CV-972, 2020 WL 1703864, at *10 (M.D. Tenn. Apr. 8, 2020)); *see also United States v. Brown*, No. 5:16-CR-097-DCR, 2019 WL 4858315, at *2 (E.D. Ky. Oct. 2, 2019) (explaining that *Havis* cannot be the basis for a post-conviction claim of ineffective assistance of trial counsel), *certificate of appealability denied*, No. 19-6269, 2020 WL 2128806 (6th Cir. Feb. 26, 2020).

Therefore, to the extent that Crawford is raising a direct challenge to his career-offender enhancement under *Havis*, this rule—that *Havis* issues may not be raised on collateral attack—provides an independent and sufficient reason for denying relief. The cases Crawford cites in his favor are all direct-review cases. *See* D.E. 114 at 16.

**B.**

Even if the Court could address Crawford's *Havis* challenge in the post-conviction context, his *Havis* challenge fails on the merits.  The statute underlying Crawford's Ohio cocaine-trafficking convictions reads, in relevant part, as follows:

(A)    No person shall knowingly do any of the following:

    (1)    Sell or offer to sell a controlled substance or a controlled substance analog;

    (2)    Prepare for shipment, ship, transport, deliver, prepare for distribution, or distribute a controlled substance or a controlled substance analog, when the offender knows or has reasonable cause to believe that the controlled substance or a controlled substance analog is intended for sale or resale by the offender or another person.

Ohio Rev. Code Ann. § 2925.03.

As Crawford correctly points out (D.E. 114 at 16), this statute is divisible, meaning that subsection (A)(1) and subsection (A)(2) describe separate crimes.  *United States v. Duffy*, 821 F. App'x 483, 486 (6th Cir. 2020) (citing *United States v. Wright*, 43 F. App'x 848, 852 (6th Cir. 2002)).

The Sixth Circuit has thoroughly analyzed this statute under *Havis* and *Cavazos*.  It has reached two relevant conclusions that are binding on this Court.

First, the Sixth Circuit has determined that, because subsection (A)(1) encompasses offers to sell, subsection (A)(1) is not categorically a controlled substance offense under *Havis*.  Therefore, "convictions under § 2925.03(A)(1) do not qualify for the career-offender enhancement."  *United States v. Alston*, 976 F.3d 727, 728 (6th Cir. 2020).

Second, the Sixth Circuit has determined subsection (A)(2) is categorically a controlled substance offense that supports the career-offender enhancement.  Subsection (A)(2) itself is not

divisible. *United States v. Smith*, 960 F.3d 883, 888 (6th Cir. 2020), *cert. denied*, No. 20-5457, 2020 WL 5883765 (U.S. Oct. 5, 2020).  A violation of (A)(2) constitutes conduct that is "no less than possession of a controlled substance with an intent to distribute it," and this offense "falls safely within" USSG § 4B1.2(b)'s definition of "controlled substance offense."  *Id*. at 889.  "Ohio convictions for violating § 2952.03(A)(2) count as 'controlled substance offense[s].'" *United States v. Smith*, 812 F. App'x 357, 358 (6th Cir. 2020); *see also Duffy*, 821 F. App'x at 486-87; *United States v. Wilson*, No. 20-3256, 2020 WL 6704154, at *1 (6th Cir. Nov. 16, 2020).

## C.

The pivotal question then is whether Crawford was convicted under subsection (A)(1) or (A)(2).  Any (A)(2) convictions would support the career-offender enhancement, while any (A)(1) convictions would not.  Again, this analysis is provided only in the alternative because *Havis* claims cannot be raised on a § 2255 motion.

Crawford's PSR does not answer the question of whether his Ohio cocaine trafficking convictions were under subsection (A)(1) or (A)(2) of Ohio Rev. Code Ann. § 2925.03.  Paragraph 44 describes a 2004 case (B-0404141) in which Crawford was found guilty of, among other offenses, three counts of "Trafficking in Cocaine."  The accompanying description states, "On April 21, 2004, the defendant sold crack cocaine in an amount greater than 25 grams, but less than 100 grams," but the criminal statute is not specified.  Paragraph 45 then describes a 2009 case (B-0906422) in which he was found guilty of, among other things, two counts of "Trafficking in Cocaine."  According to the accompanying description, "On September 16, 2009, the defendant sold more than 500 grams, but less than 1,000 grams of cocaine."  But again the criminal statute is not specified.

Crawford has supplied the Court with a copy of his judgment in the 2004 Ohio case. A judgment is one of the "*Shepard* documents" a court may consider when analyzing a predicate crime. *United States v. Hennessee*, 932 F.3d 437, 442 (6th Cir. 2019) (explaining that "*Shepard*-approved documents" include any "charging document, written plea agreement, transcript of plea colloquy, jury instructions, judgment of conviction, or other record of comparable findings of fact adopted by the defendant upon entering a guilty plea"), *cert. denied*, 140 S. Ct. 896, 205 L. Ed. 2d 471 (2020); *United States v. Ferguson*, 681 F.3d 826, 834 (6th Cir. 2012) (citing *United States v. Armstead*, 467 F.3d 943, 948 (6th Cir. 2006)); *United States v. Sosa*, 448 F. App'x 605, 609 (6th Cir. 2012) ("[B]oth a charging document and a judgment are the sorts of documents reviewable under *Shepard*.").

Crawford's January 31, 2005 judgment states, in part, that Crawford was:

found guilty of the offense(s) of:

count 1: TRAFFICKING IN COCAINE, 2925-03A1/ORCN,Fl

count 2: TRAFFICKING IN COCAINE, 2925-03A2/ORCN,F2

count 3: TRAFFICKING IN COCAINE, 2925-03A2/ORCN,F2

D.E. 114-1. The import of this document is plain. Crawford was convicted in Count One of a violation of subsection (A)(1), but his convictions on Counts Two and Three were for violations of subsection (A)(2) ("2925-03A2").

The online public docket concerning the 2004 case[4] is consistent with the judgment. It identifies Count One as "TRAFFICKING IN COCAINE 2925-03A1 ORCN," Count Two as "TRAFFICKING IN COCAINE 2925-03A2 ORCN," and Count Three as "TRAFFICKING IN COCAINE 2925-03A2 ORCN." The latter two can be understood as references to Ohio Rev. Code Ann. § 2925.03(A)(2).

---

[4] https://www.courtclerk.org/data/case_summary.php?casenumber=B+0404141

As noted, a conviction under Ohio Rev. Code Ann. § 2925.03(A)(2) is categorically a drug trafficking crime. *Smith*, 960 F.3d at 888-89.  These subsection (A)(2) convictions in the 2004 Ohio case, together with his trafficking conviction in the 2011 Kentucky Case, suffice to uphold Crawford's career-offender designation, regardless of whether his 2009 Ohio case included a controlled substance offense.  Nevertheless the Court also takes judicial notice of the public docket in Crawford's 2009 Ohio case.[5]  In that case, Count Three is described as "TRAFFICKING IN COCAINE 2925-03A2 ORCN," and Count Five is described as "TRAFFICKING IN COCAINE (DISMISS SPEC) 2925-03A2 ORCN."  Both of these counts resulted in imprisonment, and they facially appear to be convictions under subsection (A)(2).

Crawford's PSR noted that he "has three prior convictions that are considered prior felony controlled substance predicate offenses under U.S.S.G. § 4B1.1(a)."  D.E. 73 at 31; *see also id.* at 8 ¶ 25.  And Judge Bunning observed at sentencing, "There are three drug trafficking convictions which fall within the time frame, the 15-year window set forth in 4A1.2 of the guideline manual.  That is, the convictions at paragraphs 44, 45, and 46 of his presentence report."  D.E. 88 at 11; *see also id.* at 14-15.  These observations remain true.  Crawford has more than the two necessary drug trafficking convictions needed to support the Career Offender enhancement.  Even if cognizable on post-conviction, any *Havis*-based attack on his Career Offender designation would be futile.  As such, Crawford cannot prove ineffective assistance of trial or appellate counsel in relation to this enhancement.  Grounds Eight, Nine, and Ten of Crawford's original § 2255 motion must be dismissed.

### D.

It is unclear whether Crawford is also challenging whether his 2011 Boone County, Kentucky, conviction for second-degree trafficking is a career-offender predicate.  *See* D.E. 99-6

---

[5] https://www.courtclerk.org/data/case_summary.php?casenumber=B+0906422-A

at 62; D.E. 114 at 20; PSR ¶¶ 25, 46; *see also* D.E. 110 at 4 (suggesting the offense was amended down to possession).   But Crawford was undoubtedly convicted of trafficking, and that conviction does qualify.

The PSR identifies one of Crawford's three controlled substance offenses as "*Boone County Circuit Court, Docket No.: 11-CR-117*."  D.E. 73 at 8 ¶ 25.  The PSR, in describing that case, notes that Crawford was found guilty of Counts One (possession of cocaine), Two (second-degree trafficking), and Seven (possession of marijuana).  *Id*. at 14 ¶ 46.  For Count Two, the trafficking count, Crawford received a sentence of three years.  *Id*.

Crawford has submitted a court record regarding this case which confirms his conviction on Count Two for "TICS [Trafficking in Controlled Substance] 2ND DEGREE, 1ST OFFENSE – DRUG UNSPECIFIED."  D.E. 108-1 at 3; D.E. 110-1 at 3; D.E. 114-1 at 5.  The public docket on E-Courts also shows a conviction on a plea of guilty and three-year sentence on Count Two's charge of "TICS, 2ND DEGREE, 1ST OFFENSE - DRUG UNSPECIFIED - 218A.1413(1)(A)."

This 2011 Boone County conviction is clearly a conviction under Ky. Rev. Stat. Ann. § 218A.1413, which is at least a Class D felony.  This conviction qualifies as a controlled substance offense under USSG 4B1.2(b).  *See United States v. Whitfield*, 726 F. App'x 373, 374 (6th Cir. 2018) (observing that the defendant was sentenced as a career offender on account of two convictions under § 218A.1413).

## VII.  Conclusion

For the reasons discussed above, the undersigned **RECOMMENDS** that Crawford's § 2255 motion be **DENIED.**

This case does not warrant an evidentiary hearing. "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an

applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief. *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007). Here, to the extent Crawford's factual assertions differ from those of his attorney, Crawford's assertions (that are not otherwise plainly contradicted by the record) have been taken as true. Crawford's arguments do not warrant relief, even if he is accurate on the facts.

The undersigned further **RECOMMENDS** that no Certificate of Appealability issue. Under 28 U.S.C. § 2253(c)(2), a certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." *See also* Rule 11 of the Rules Governing Section 2255 proceedings. This standard is met if the defendant can show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)). The Court has considered the issuance of a Certificate of Appealability as to each of Crawford's claims. No reasonable jurist would find the assessments on the merits above to be wrong or debatable; thus, no Certificate of Appealability should issue.

Any objection to, or argument against, dismissal must be asserted properly and in response to this Recommended Disposition. The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights and mechanics concerning this Recommended Disposition, issued under subsection (B) of the statute. *See also* Rules Governing Section 2255 Proceedings, Rule 8(b). Within **fourteen days** after being served with a copy of this decision, any party may serve and file specific written objections to any or all findings or recommendations for determination, *de novo*, by the District Judge. Failure to make a timely objection consistent with the statute and

rule may, and normally will, result in waiver of further appeal to or review by the District Judge and Court of Appeals. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Wandahsega*, 924 F.3d 868, 878 (6th Cir. 2019).

This the 10th day of December, 2020.

**Signed By:**

**_Hanly A. Ingram_**

**United States Magistrate Judge**